IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Dave J. McNett, | Case No. 3:02 CV 7576 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Hardin Community Federal Credit Union, | |
| Defendant. | |

This matter is before the Court on multiple pretrial motions filed by both parties. This case is set for a jury trial commencing August 28, 2006. This Court has jurisdiction pursuant to 28 U.S.C. §1331.

**MOTIONS TO AMEND ANSWER AND BIFURCATE TRIAL**

**A.   Defendant's Motion to Amend Answer**

Defendant seeks to amend its Answer to include an affirmative defense based upon "after-acquired evidence." Specifically, Defendant claims it learned at Plaintiff's deposition that he removed 60-70 member files without authorization on the day he was terminated and that such misconduct would have led to his lawful termination in any event.

Under Fed. R. Civ. P. 15(a), the trial court is vested with discretion in granting or denying leave to amend a pleading. *See Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In making this determination, a trial court may consider a number of factors, including undue delay,

bad faith or dilatory motive on the part of the movant, undue prejudice, futility of the amendment, or the repeated failure to cure deficiencies by amendments previously allowed. *Id.* Other relevant factors include the need for additional discovery, strain on the court's docket, or the lack of prejudice as the issue is already known. *See Budd Co. v Travelers Indem. Co.,* 820 F.2d 787, 792 (6th Cir. 1987). Delay alone is insufficient to deny the proposed amendment. *Robinson v. Michigan Consol. Gas Co. Inc.,* 918 F.2d 579, 581 (6th Cir. 1990) (citations omitted). Where a party seeks leave to amend under Rule 15(a), "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake,* 49 F.3d 1197, 1202 (6th Cir. 1995) (citing *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 489 F.2d 968 (6th Cir. 1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974)).

In this instance, Defendant was aware at the time of Plaintiff's deposition, taken in May 2003, that Plaintiff removed Credit Union files at the time of his termination. This Court granted summary judgment on Count 1 and dismissed Count 2 without prejudice. On appeal, the Sixth Circuit reversed and remanded back to the District Court in March 2005. In May 2005, this Court scheduled a trial date. Therefore, following the return of this case from the Circuit, the Defendant waited over 16 months before requesting leave to assert this affirmative defense of which it had knowledge as far back as May 2003. In addition, filing such a request a mere 10 days before trial is certainly untimely. Plaintiff states that the addition of this defense mandates additional discovery on his part, an impossible task on the eve of trial.

In this Court's view, to allow the inclusion of this new affirmative defense would either delay the trial in order to allow for additional discovery or force Plaintiff to forego that discovery and yet try the case. *See Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 161-162 (S.D.N.Y. 2005)

(employer not granted leave to amend answer on eve of trial to add affirmative defense of after-acquired evidence due to unexplained 22 month delay). Neither result is satisfactory in this 44 month old case. For these reasons, this Court denies Defendant's leave to amend its Answer *instanter*.

### B. Defendant's Motion to Bifurcate

Defendant moves for bifurcation of the issues of liability and damages for the following reasons: (1) uncertainty of the availability of punitive damages under whistle blower protection provision of the Federal Credit Union Act ("FCUA"); (2) lack of discovery of Plaintiff's alleged damages and mitigation since Plaintiff's discovery deposition in May 2003; and (3) after-acquired evidence issues.

As Defendant's Motion for leave to amend its Answer has been denied, the third reason in favor of bifurcation is now moot. Defendant's second reason, lack of discovery regarding alleged damages and mitigation, is without merit. As stated previously, the case was returned from the Circuit in March 2005 which afforded ample time to undertake discovery, including a supplemental deposition of Plaintiff. The failure of either party to proceed forward on that front does not favor bifurcation.

On the issue of punitive damages, a court may award punitive damages in an action under the Federal Credit Union Act ("FCUA"), 12 U.S.C. § 1790(b). In *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 70-71 (1992), the Supreme Court held that "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute."

The FCUA provides, in relevant part 12 U.S.C. § 1790(b):

3

> (c) Remedies. If the district court determines that a violation of subsection (a) has occurred, it may order the credit union or the Administration which committed the violation --
>     (1) to reinstate the employee to his former position,
>     (2) to pay compensatory damages, or
>     (3) take other appropriate actions to remedy any past discrimination.

This language provides for "other appropriate actions" and does not expressly exclude punitive damages. Therefore, under *Franklin*, this Court may grant appropriate relief in an action brought pursuant to the FCUA, including punitive damages, because Congress has not expressly indicated otherwise. *See also, Oldroyd v. Elmira Sav. Bank*, 956 F. Supp. 393 (W.D.N.Y. 1997) (holding that punitive damages are permissive in a wrongful discharge case under statutory language similar to that of the FCUA); *Reich v. Cambridgeport Air Sys.*, 26 F.3d 1187 (1st Cir. 1994) (holding that wrongful discharge is an intentional tort which may implicate punitive damages); *Beckett v. Atlas Air*, 968 F. Supp. 814 (E.D.N.Y. 1997) (holding that punitive damages are permitted for wrongful discharge actions under the Railway Labor Act, even though the cause of action is not statutory but judicially implied and the statute is thus silent on damages); *DeLeo v. City of Stamford*, 919 F.Supp. 70, 74 (D. Conn. 1995) (holding that punitive damages are available under the Rehabilitation Act of 1973 even though they are not explicitly authorized by the statute).

For the reasons explained above, this Court holds that punitive damages are an available remedy under the FCUA's remedies provision for wrongful discharge. This determination negates any need for bifurcation, unlike *in Garrett v. Langley Federal Credit Union*, 121 F. Supp. 887 (E.D. Va. 2000), where the uncertainty of damages led the court to conclude bifurcation was appropriate. Further, Federal Civil Rule 42(b) allows for bifurcation "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Defendant does not

explain how bifurcation here furthers these goals, and this Court finds it would not. Accordingly, Defendant's Motion to Bifurcate (Doc. No. 82) is denied.

## MOTIONS IN LIMINE

### A. Standard

Motions in limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose. *See Jonasson v. Lutheran Child and Family Serv.*, 115 F.3d 436, 440 (7th Cir. 1997). The court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. *Cf. Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984) (federal district courts have authority to make in limine rulings pursuant to their authority to manage trials). Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See United States v. Connelly*, 874 F.2d 412, 416 (7th Cir.1989) (citing *Luce*, 469 U.S. at 41, 105 S.Ct. at 463) ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."); *Hawthorne Partners v. AT & T Technologies, Inc.,* 831 F.Supp. 1398, 1400- 1401 (N.D.Ill.1993).

**B.     Motion to Exclude Testimony from Jennings and Houser**

Plaintiff seeks to exclude testimony from two witnesses because their statements are not relevant and any probative value is outweighed by the danger of unfair prejudice under Fed. R. Evid. 403. Within his Motion, Plaintiff references excerpts of deposition testimony from Matthew Jennings and Debra Houser which a jury could view as racist.

In opposition, Defendant argues such testimony is admissible on the basis of relevancy as the Plaintiff's comments and his treatment of minority Credit Union members were factors in the decision to terminate his employment.

The central issue in this case is the basis for Plaintiff's termination. Assuming the Credit Union's Board considered these comments and conduct as a basis for Plaintiff's termination, such evidence is relevant and can be considered by the jury. Accordingly, at this juncture, the Plaintiff's Motion to exclude this testimony is denied.

**C.     Motion to Exclude Clark's Testimony**

Plaintiff seeks to exclude testimony of Douglas Clark which implies that Plaintiff had difficulty working with female employees. Plaintiff seeks to exclude this testimony on the grounds that it would be highly prejudicial under Fed. R. Evid. 403.

Defendant argues that Plaintiff's refusal to report to a female supervisor is relevant and that the CEO of the Credit Union allowed Plaintiff to report directly to him but placed a memorandum in Plaintiff's personnel file regarding this insubordination. There is also evidence that Plaintiff routinely made disparaging remarks directed at female subordinates, that his mistreatment of female employees was known to the Board, and at least one Board member moved to terminate Plaintiff based upon this

conduct. Defendant submits this information is relevant to the key issue of termination, and this Court agrees. Plaintiff's Motion to exclude this testimony is therefore denied.

### D. Motion to Exclude Reference to Lima Sohio BP Employees Federal Credit Union

Plaintiff seeks to exclude reference to his prior employment with Lima Sohio BP Federal Credit Union as he anticipates Defendant will attempt to show that Plaintiff engaged in questionable practices. Plaintiff contends that admission of this information is contrary under Fed. R. Evid. 404(b) as it introduces inadmissible character evidence.

Defendant disputes Plaintiff's characterization and contends the evidence relating to Plaintiff's former employment is admissible to establish: (1) his knowledge that other credit unions permit extension of member loan due dates in cases of economic hardships; (2) a pattern of mistreatment of female coworkers; and (3) to rebut Plaintiff's testimony that he believed he was entitled to remove confidential documents from the institution's premises. Defendant states that former coworkers at Lima Sohio BP Credit Union will testify as to Plaintiff's treatment of women and establish a pattern of sexist comments. In addition, Defendant intends to show that Plaintiff was also reprimanded at Lima Sohio BP Credit Union for removing confidential documents from that institution.

The issue of Plaintiff's knowledge regarding credit union practices and his conduct towards female workers may be relevant to the issues presently in dispute and, on these points, this Court denies the Motion. The issue of after-acquired evidence, however, is no longer at issue and the Motion is granted as to that testimony.

### E. Motion in Limine re: Intent and Financial Information

#### 1. Opinion as to Intent.

Plaintiff wants to exclude portions of expert testimony by Daniel Mahalak relating to the intent of Matthew Jennings, Defendant's CEO. During his deposition, Mahalak stated that he reviewed Jennings' deposition testimony in order to determine whether Jennings' practice of due-date bumping was intended to misrepresent Defendant's financial condition. Mahalak was unable to formulate an opinion on the intent to understate and hide a problem. He stated, "I cannot determine intent and any answer on my part would be speculation." Plaintiff wants to keep Mahalak's "non-opinion" testimony out as it would be prejudicial to his case; Plaintiff also claims that his expert, John Afek, opines there was intent to understate and hide a problem.

Defendant objects on the basis that differing expert opinions are not a basis for exclusion. In addition to considering Jennings' testimony, expert Mahalak also considered documents provided to Plaintiff's expert as well. Therefore, Mahalak's "non-opinion" which is contrary to Plaintiff's expert opinion can be considered by the jury.

This Court agrees that differing opinions by experts are to be considered by the jury who will ultimately make the determination whose opinion is most persuasive. As expert Mahalak considered the same materials as Plaintiff's expert, his opinion can be considered by the jury, as it represents a contrary position from that of Plaintiff's expert. Accordingly, Plaintiff's Motion in Limine (Doc. No. 96) is denied as to this issue.

**2.     Opinion as to Financial Information**

Plaintiff wants to exclude Mahalak's testimony that the practice of due-date bumping did not materially alter the financial condition of Defendant. Specifically, Mahalak considered Defendant's loan practices up through June 2006, four years **after** Plaintiff was terminated, and Plaintiff requests that this testimony be excluded because the post-termination practice should be treated as a subsequent remedial measure. There is no dispute that the NCUA examiners required Defendant to immediately stop the practice of due-date bumping after its audit in 2002, and by stopping the practice, Defendant's financial condition would have markedly improved without as many delinquent loans. Plaintiff argues that allowing this information would confuse the jury into believing that the practice of due-date bumping did not affect Defendant's financial status.

In contrast, Defendant contends the 2002-2006 time frame is acceptable, because the only way to determine whether the practice was effective is by examining the long-term effects of the practice on the individual loans. Evidence of whether the loans were repaid is relevant to show that Defendant's practice of advancing loan dates in cases of economic hardship had a positive impact upon the members and Defendant's status.

The parties do not dispute that Defendant ceased its practice of due-date bumping upon demand by the NCUA examiners after the 2002 audit. The standards of the NCUA are the relevant benchmarks for consideration, and consideration of a time frame four years after cessation of these practices at the behest of the NCUA would only serve to confuse the jury. At this juncture, the Motion in Limine on Mahalak's financial opinion (Doc. No. 96) is granted, and the opinion cannot include the period following the 2002 audit.

### F. Motion to Exclude After-Acquired Evidence

This Court has denied Defendant's Motion to amend the Answer on this issue. Therefore, Plaintiff's Motion to exclude this evidence is denied as moot (Doc. No. 97).

## CONCLUSION

For the reasons stated above, Defendant's Motions to Amend Answer (Doc. No. 94) and to Bifurcate (Doc. No. 82) are denied. Plaintiff's Motions in Limine (Doc. Nos. 88, 89, 90 and 97) are denied without prejudice. Plaintiff's Motion in Limine (Doc. No. 96) is granted regarding Mahalak's opinion regarding certain financial information and denied regarding opinion evidence on the issue of intent.

IT IS SO ORDERED.

          s/ *Jack Zouhary*
          JACK ZOUHARY
          U. S. DISTRICT JUDGE

August 24, 2006